UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>JULIEN GIRAUD JR. and<br>JULIEN GIRAUD III,<br>            Defendants | Crim. No. 24-768 (MWB) |

SUPPLEMENTAL BRIEF OPPOSING MOTION TO BAR
ALINA HABBA FROM SUPERVISING THE PROSECUTION OF THIS CASE

PAMELA J. BONDI
U.S. Attorney General

HENRY C. WHITAKER
Counselor to the Attorney General

ALINA HABBA
Acting U.S. Attorney
Special Attorney

ROBERT A. PARKER
KATHERINE TWOMEY ALLEN
Criminal Division

MARK E. COYNE
Assistant U.S. Attorney
Chief, Appeals Division
(973) 297-2002

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................................. ii

ARGUMENT ................................................................................................................. 2

I.    Ms. Habba is validly serving as the Acting U.S. Attorney under the FVRA. ............ 2

      A.    The FVRA authorizes Ms. Habba's service as Acting U.S. Attorney............. 3

      B.    Ms. Habba did not have to already be the First Assistant when she
           assumed the role of Acting U.S. Attorney ..................................................... 5

      C.    Ms. Habba's withdrawn nomination does not preclude her from serving
           as Acting U.S Attorney ................................................................................ 8

      D.    The Attorney General's invocation of the FVRA here is not a
           "workaround" that nullifies § 546 .............................................................. 10

      E.    The Girauds' argument about interim appointments as United States
           Attorney under § 546(a) are both irrelevant and wrong............................... 12

II.   At minimum, Ms. Habba can lead the USAO-NJ as a Special Attorney and
      FAUSA pursuant to the Attorney General's express delegation of authority
      to her................................................................................................................... 15

CONCLUSION ............................................................................................................. 25

TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
   35 F.4th 1328 (Fed. Cir. 2022)..............................................................18, 19, 22

*Dole Food Co. v. Patrickson,*
   538 U.S. 468 (2003) ..................................................................................9

*Edmond v. United States,*
   520 U.S. 651 (1997) ................................................................................23

*English v. Trump,*
   279 F. Supp. 3d 307 (D.D.C. 2018) ............................................................7

*Furando v. Ortiz,*
   20-Civ-3739, 2020 WL 1922357 (D.N.J. Apr. 21, 2020) ..............................10

*Gonzales & Gonzales Bonds & Insurance Agency Inc. v. U.S. Dept. of Homeland Security,*
   107 F.4th (9th Cir. 2024) .......................................................................20, 22

*Guedes v. BATFE,*
   920 F.3d 1 (D.C. Cir. 2019).......................................................................7

*Hooks v. Kitsap Tenant Support Services,*
   816 F.3d 550 (9th Cir. 2016).....................................................................7, 8

*Kajmowicz v. Whitaker,*
   42 F.4th 138 (3d Cir. 2022)...................................................................19, 22

*Kinsella v. United States ex rel. Singleton,*
   361 U.S. 234 (1960) ...............................................................................25

*L.M.-M. v. Cuccinelli,*
   442 F. Supp. 3d 1 (D.D.C. 2020) ...............................................................7

*Lucia v. SEC,*
   585 U.S. 237 (2018) ...............................................................................24

*Maliandi v. Montclair State Univ.,*
   845 F.3d 77 (3d Cir. 2016)......................................................................10

*McGrain v. Daugherty,*
   273 U.S. 135 (1927) ...............................................................................16

*Nichols v. United States,*
   578 U.S. 104 (2016) .................................................................................9

*NLRB v. SW General, Inc.,*
    580 U.S. 288 (2017) ................................................................. 7, 8, 23

*Peters v. Kiff,*
    407 U.S. 493 (1972) ...................................................................... 24

*Russello v. United States,*
    464 U.S. 16 (1983) ......................................................................... 5

*Schaghticoke Tribal Nation v. Kempthorne,*
    587 F.3d 132 (2d Cir. 2009) ........................................................ 19

*Seila Law LLC v. CFPB,*
    591 U.S. 197 (2020) ...................................................................... 12

*Stand Up for California! v. United States Dep't of the Interior,*
    994 F.3d 616 (D.C. Cir. 2021) ..................................................... 20

*Stand Up for California! v. United States Dep't of the Interior,*
    298 F. Supp. 3d 616 (D.D.C. 2018) ............................................. 20

*Tuney v. Ohio,*
    273 U.S. 510 (1927) ...................................................................... 24

*United States v. Eaton,*
    169 U.S. 331 (1898) ...................................................................... 24

*United States v. Gantt,*
    194 F.3d 987 (9th Cir. 1999) .................................................. 10, 24

*United States v. Hilario,*
    218 F.3d 19 (1st Cir. 2000) .......................................................... 24

*United States v. Lane,*
    64 M.J. 1 (C.A.A.F. 2006) ........................................................... 24

*United States v. Mangan,*
    575 F.2d 32 (2d Cir. 1978) ........................................................... 23

*United States v. Nixon,*
    418 U.S. 683 (1974) ...................................................................... 16

*United States v. Smith,*
    962 F.3d 755 (4th Cir. 2020) .................................................. 23, 24

*United States v. Weyrauch,*
    544 F.3d 969 (9th Cir. 2009) ....................................................... 22

*Ward v. Village of Monroeville,*
   409 U.S. 57 (1972) ................................................................... 24

*Young v. United States,*
   481 U.S. 787 (1987) ................................................................... 25

**<u>Constitution, Statutes, Regulations and Rules</u>**

U.S. Const. Art. II, § 2, cl. 2. ...............................................23, 24

5 U.S.C. § 3345 ....................................................................2, 17

5 U.S.C. § 3345(a) ...................................................................... 3

5 U.S.C. § 3345(a)(1) ..........................................................*passim*

5 U.S.C. § 3345(a)(2) ............................................................6, 23

5 U.S.C. § 3345(a)(3) ............................................................6, 23

5 U.S.C. § 3345(a)(3)(A) ............................................................. 5

5 U.S.C. § 3345(b)(1) ............................................................8, 23

5 U.S.C. § 3345(b)(1)(A) ..........................................................6, 8

5 U.S.C. § 3345(b)(1)(B) ..........................................................8, 9

5 U.S.C. § 3346 ....................................................................... 11

5 U.S.C. § 3346(b)(1) ................................................................ 11

5 U.S.C. § 3347(a) ................................................................... 10

5 U.S.C. § 3348(a)(2)(A)(ii) ........................................................ 17

5 U.S.C. § 3348(a)(2) ................................................................ 19

5 U.S.C. § 3348(b)(i)(II) ............................................................ 17

5 U.S.C. § 3348(d)(2) ...........................................................19, 20

5 U.S.C. § 3349(a) ................................................................... 11

5 U.S.C. § 3349(b) .................................................................... 6

18 U.S.C. § 3731 ..................................................................... 22

26 U.S.C. § 6103(i)(1)(B) ............................................................ 23

28 U.S.C. § 503 ............................................................................................ 15

28 U.S.C. § 509 ............................................................................................ 15

28 U.S.C. § 510 ................................................................................. 4, 16, 21

28 U.S.C. § 515 ................................................................................. 4, 16, 21

28 U.S.C. § 515(a) ......................................................................... 15, 16, 22

28 U.S.C. § 518 ............................................................................................ 15

28 U.S.C. § 518(b) ................................................................................. 15, 16

28 U.S.C. § 519 ....................................................................................... 16, 21

28 U.S.C. § 533 ......................................................................................... 4, 16

28 U.S.C. § 541 .............................................................................................. 3

28 U.S.C. § 541(a) ....................................................................................... 21

28 U.S.C. § 541(b) ....................................................................................... 21

28 U.S.C. § 541(c) ................................................................................. 12, 21

28 U.S.C. § 542 ................................................................................. 4, 12, 16

28 U.S.C. § 542(b) ....................................................................... 2, 4, 12, 16

28 U.S.C. § 543 ................................................................................. 4, 15, 16

28 U.S.C. § 545 ....................................................................................... 17, 21

28 U.S.C. § 545(a) ....................................................................................... 21

28 U.S.C. § 546 ..................................................................................... *passim*

28 U.S.C. § 546(a) ............................................................................. 12, 13, 14

28 U.S.C. § 546(b) ....................................................................................... 13

28 U.S.C. § 546(c) ................................................................................. 3, 7, 12, 14

28 U.S.C. § 546(c)(2) ................................................................................... 11

28 U.S.C. § 546(d) ............................................................................... *passim*

28 U.S.C. § 547 ............................................................................................ 15

28 C.F.R. § 0.137(b) .................................................................................... 2, 4, 12

Federal Rule of Evidence 201. ............................................................................ 10

**<u>Other Authorities</u>**

67 C.J.S. Officers § 144 (2024 Update) ............................................................. 14

67 C.J.S. Officers § 145 (2024 Update) ............................................................. 14

Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 633–35 (2020) ...................... 20

Brief for Appellee,
    2018 WL 2418885 (9th Cir. 2018)................................................................. 20

Brief for Plaintiff-Appellee,
    2018 WL 5309976 (10th Cir. 2018)............................................................... 20

Brief for Plaintiff-Appellee,
    2023 WL 2600208 (6th Cir. 2023)................................................................. 20

Congressional Record, Senate Report 105-250 (July 15, 1998) ........................................ 18

Congressional Record, Senate Vol. 171, No. 127 (July 24, 2025)....................................... 9

Congressional Research Services,
    *The Vacancies Act: A Legal Overview* (Jan. 27, 2025) ...................................... 11

*Designation of Acting Associate Attorney General*,
    25 Op. O.L.C. 177 (Aug. 7, 2001)................................................................... 6

*Designating an Acting Attorney General*,
    42 Op. O.L.C. 182 (2018)............................................................................... 6

*Federal Vacancies for Prior Administration*, Joseph R. Biden, Jr.,
    Administrative Vacancies, Biden_Vacancy.csv, row 238 (2022)..................................... 8

*Guidance on Application of Federal Vacancies Reform Act of 1998*,
    23 Op. O.L.C. 60, 72 (Mar. 22, 1999) ......................................................... 18

Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J.
    Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008)....................... 19

Letter from Victor S. Rezendes, Managing Director, Strategic Issues,
    GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001)................. 6

Nomination of Ann Elizabeth Carlson for Department of Transportation,
  118th Congress (2023-2024) ........................................................................... 8

*Temporary Filling of Vacancies in the Office of United States Attorney*,
  27 Op. O.L.C. 149, 149–50 (2003) ............................................................3, 11

This supplemental brief addresses the issues this Court raised in its August 1, 2025 Opinion (DE116) and Order (DE117) regarding whether the circumstances surrounding Alina Habba's service as Acting U.S. Attorney and Special Attorney require the disqualification of her and anyone she supervises from this case (or any other). They do not. The Girauds' motion should be denied.[1]

First, as we explained in our prior briefing, DE108 at 7–23, Ms. Habba is validly serving as the Acting U.S. Attorney. The office of U.S. Attorney is indisputably vacant, as Ms. Habba resigned as interim U.S. Attorney on July 24 and the President on July 26 removed the individual whom the District Court had purported to appoint as her successor. The Attorney General properly appointed Ms. Habba Special Attorney and designated her as the First Assistant U.S. Attorney (FAUSA or First Assistant), and as the First Assistant, she can serve as the Acting U.S. Attorney under the Federal Vacancies Reform Act (FVRA). Ms. Habba's role as Acting U.S. Attorney contravenes neither the FVRA nor 28 U.S.C. § 546(d).

The Girauds' counterarguments on this point fail. Their latest brief focuses on whether Ms. Habba's prior appointment under § 546(a) as the *interim* U.S. Attorney was valid and when that appointment expired. But they do not and cannot dispute that President Trump validly removed the person the District Court purported to appoint as interim U.S. Attorney under § 546(d) (even assuming that appointment had taken effect). The precise date when Ms. Habba's interim appointment as U.S. Attorney expired is beside the point: She became Acting U.S. Attorney, at the latest, after the President removed the District Court's putative appointee, which created a vacancy in the office of U.S. Attorney for the District of New Jersey even if the Court's appointment was otherwise effective. Moreover, the Girauds' argument that the FVRA requires the First Assistant to have been serving in that role before the vacancy arose is contrary to plain text, historical practice, and common sense, which all recognize that the

---

[1] In accordance with this Court's Order, DE117 at 3, declarations accompany this brief that authenticate the exhibits attached to the Government's first brief (DE108-1–DE108-9). *See* DE127-1 (Declaration of Valarie Mulcahy); DE127-2 (Declaration of Sergio Gor).

First Assistant can serve as the "Acting" officer under the FVRA regardless of when she becomes First Assistant.

Second, as we explained in our prior briefing, DE108 at 23–27; DE114 at 1–10, even were Ms. Habba not eligible to serve as the Acting U.S. Attorney, she would be able to exercise prosecutorial and supervisory authority in the District of New Jersey pursuant to her position as Special Attorney and FAUSA and the Attorney General's express delegation of authority to her in those capacities. There is thus no basis for prohibiting her or anyone else she supervises in the U.S. Attorney's Office (USAO-NJ) from participating in this prosecution. The Girauds' cursory counter-argument conflicts with the plain text of the relevant statutes, longstanding executive practice, and the decisions of numerous courts of appeals.

Finally, the Girauds' Appointments Clause and Due Process Clause arguments are entirely derivative of their flawed claims that Ms. Habba's service as Acting U.S. Attorney violates the FVRA and § 546. The Girauds do not dispute that, if the FVRA authorizes the Attorney General to select Ms. Habba to serve as Acting U.S Attorney, that statutory authorization satisfies the Appointments Clause and Due Process, because an Acting U.S. Attorney is at most an inferior officer, whom Congress has lawfully empowered the Attorney General to appoint.

ARGUMENT

## I.   Ms. Habba is validly serving as the Acting U.S. Attorney under the FVRA.

While Ms. Habba was still the interim U.S. Attorney, the Attorney General removed the then-FAUSA from her position, which 28 U.S.C. § 542(b) and 28 C.F.R. § 0.137(b) authorized the Attorney General to do. The President then withdrew Ms. Habba's nomination to be the U.S. Attorney. Thereafter, once (a) Ms. Habba resigned as interim U.S. Attorney and (b) the Attorney General appointed her Special Attorney and designated her as First Assistant, Ms. Habba properly became the Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1).

Using the FVRA to permit a FAUSA to serve as an *Acting* U.S. Attorney does not contravene the separate authorization in 28 U.S.C. § 546 to appoint an *interim* U.S. Attorney.

– 2 –

Indeed, after the last confirmed U.S. Attorney vacated office by resigning, a prior FAUSA served as the Acting U.S. Attorney from early January 2025 through early March 2025, when an interim U.S. Attorney first began serving under § 546. The Girauds do not dispute that the Attorney General permissibly relied on the FVRA rather than § 546 to address the vacancy during those months. Nothing prevented the Attorney General from ceasing to invoke § 546 and instead resuming use of the FVRA. *See Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149–50 (Sept. 5, 2003). The District Court's appointment authority under § 546(d) was never triggered because Ms. Habba resigned before her appointment as interim U.S. Attorney expired under § 546(c)(2); and regardless, the President removed as U.S. Attorney the person whom the District Court purported to appoint, ensuring that the office was vacant. Nothing in the FVRA's text required Ms. Habba to have already been the First Assistant when the vacancy arose, and in any event, Ms. Habba's service as First Assistant began when her resignation as interim U.S. Attorney took effect.

**A.    The FVRA authorizes Ms. Habba's service as Acting U.S. Attorney.**

Under the FVRA, when an Executive Branch office subject to Presidential appointment and Senate confirmation (a "PAS" office) becomes vacant, the office may be temporarily filled on an acting basis. *See* 5 U.S.C. § 3345(a). No one disputes that the office of the U.S. Attorney for the District of New Jersey is a PAS office. *See* 28 U.S.C. § 541(a). That office is vacant: the last confirmed U.S. Attorney resigned in January; Ms. Habba resigned as interim U.S. Attorney on July 24; and, on July 26, the President removed the individual whom the District Court had conditionally appointed as Ms. Habba's replacement in order to confirm that individual's purported appointment was ineffective. Accordingly, the FVRA permits the Executive Branch to temporarily fill the vacant office of U.S. Attorney.

Section 3345(a) identifies three categories of individuals who may perform the functions of a vacant office as an "acting officer" without having been appointed to that office by the President and confirmed by the Senate. Under the first category, the "first assistant to the

office" shall, by default, "perform the functions and duties of the office temporarily in an acting capacity," subject to statutory time limits. 5 U.S.C. § 3345(a)(1).

By regulation, every PAS office within the Department of Justice must have "a First Assistant within the meaning of the [FVRA]." 28 C.F.R. § 0.137(b). "Where there is a position of Principal Deputy to the PAS office, the Principal Deputy shall be the First Assistant. Where there is no position of Principal Deputy to the PAS office, *the First Assistant shall be the person whom the Attorney General designates in writing.*" *Id.* (emphasis added).

As the Government's first brief explained, Ms. Habba resigned her interim position as U.S. Attorney as of 5 p.m. on July 24, 2025, more than one day before her 120-day term under § 546 was set to expire. DE108 at 5–6; DE108-4 (Exhibit D). The same day, in writing, the Attorney General appointed Ms. Habba as a Special Attorney and designated her as the First Assistant—a position that had itself been vacant since July 22, 2025. DE108-3 (Exhibit C); DE108-7 (Exhibit G).

The latter vacancy resulted from the Attorney General's lawful exercise of her authority to "remov[e]" any "assistant United States attorney," 28 U.S.C. § 542(b), and to designate a person in the office as first assistant, 28 C.F.R. § 0.137(b). The Attorney General could fill that vacancy by exercising her authority to appoint attorneys to assist her in executing the Department's statutory functions. *See* 28 U.S.C. §§ 510, 515, 533, 542, 543. And the Attorney General could then designate Ms. Habba as First Assistant in writing, 28 C.F.R. § 0.137(b), to perform the duties that formerly had been the prior FAUSA's duties. Having been lawfully appointed as Special Attorney and designated as the First Assistant, DE108-7 (Exhibit G), Ms. Habba was then entitled to "perform the functions and duties of the office" of U.S. Attorney "in an acting capacity," subject to the time limits of the FVRA. 5 U.S.C. § 3345(a)(1).

### B.  Ms. Habba did not have to already be the First Assistant when she assumed the role of Acting U.S. Attorney.

In response, the Girauds invent a requirement that, to serve as an "Acting officer" under § 3345(a)(1), one must already be the first assistant to that office when the vacancy

– 4 –

arises. DE121 at 16. That is dead wrong textually; it makes no sense practically; and it relies on a mistaken premise.

The FVRA provides that, if there is a vacancy in a PAS office, "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). The Girauds summarily contend that the statute's use of "the definite article 'the,'" DE121 at 16, means that a first assistant cannot serve as an Acting officer unless she also happened to be serving as first assistant immediately before the vacancy arose. According to them, that means a first assistant placed in office after the vacancy arises is ineligible for acting service. But the definite article simply reflects that there is only one first assistant at a time, not that there is some implicit backward-looking requirement that the person have served as first assistant before the vacancy. The balance of the statutory text proves the point. The relevant first assistant is the first assistant "to the *office* of such officer," 5 U.S.C. § 3345(a)(1) (emphasis added)—not the first assistant to any particular *officer*.

The Girauds' contrary contention conflicts with the statutory structure. Elsewhere in the same section, Congress explicitly imposed backward-looking eligibility requirements that do not apply to whether a First Assistant is eligible to serve under § 3345(a)(1). *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (cleaned up). Two paragraphs later, for instance, Congress made ineligible for a presidential Acting designation certain officials who had not served in the agency for at least 90 days in the year preceding when the vacancy arose. *See* 5 U.S.C. § 3345(a)(3)(A). In the next subsection of the statute, as well, Congress lifted the general prohibition on having an acting official also be the nominee for anyone who had served as first assistant for at least 90 days prior to the vacancy's arising. *See id.* § 3345(b)(1)(A). No such backward-looking eligibility requirement, however, applies to an official who is appointed first assistant under § 3345(a)(1) and is not the nominee for the position in question. To the contrary, the general

– 5 –

prohibition expressly contemplates that a first assistant *may* serve as acting even if she "did not serve in the position of first assistant" prior to the vacancy, so long as she is not also the nominee. *Id.*

Adopting the Girauds' argument would also upend settled Executive Branch practice. Administrations of both parties have routinely, at the start of a new Administration, temporarily filled PAS positions that become vacant *before* noon on Inauguration Day by appointing new first assistants *after* noon on Inauguration Day. Those first assistants, by automatic operation of § 3345(a)(1), then serve in an acting capacity, subject to the FVRA's time constraints. The Government Accountability Office (GAO)—which is statutorily charged with monitoring FVRA compliance, *see* 5 U.S.C. 3349(b)—agrees with that longstanding practice. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001), *available at* https://www.gao.gov/assets/gao-02-272r.pdf. So does the Department of Justice's Office of Legal Counsel (OLC). *See Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 179–81 (2001). The Girauds have provided no sound basis for the court to upend that longstanding practice, which is often essential to the ability of new Administrations to effectively govern.

The Girauds also err in contending that our interpretation "effectively creates a fourth, limitless method of appointment" that permits an "end-run around the eligibility criteria in § 3345(a)(2)–(3)." DE121 at 17. For example, § 3345(a)(1) frequently is unavailable to fill a PAS vacancy in the office of the agency head, particularly at the start of a presidential Administration, because the first assistant position itself is both vacant and a PAS office. In other instances, the President may wish to designate an official other than the first assistant as the acting official. *See, e.g.*, *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) (discussing the designation of Matthew Whitaker as Acting Attorney General under § 3345(a)(3)). In those circumstances and others, the Executive Branch must and does invoke § 3345(a)(2) or (3) to designate an acting official, subject to the distinct eligibility requirements in those provisions. But where such circumstances are absent, following the default statutory

– 6 –

rule—appointing a new first assistant, and having that official assume acting duties under the FVRA—is the usual and most straightforward way to temporarily fill the vacancy.

The Girauds cite no authority to the contrary, but they appear to mischaracterize several court decisions. DE121 at 16–17. They start by misquoting a dissent, without acknowledging it. DE121 at 16 (citing *NLRB v. SW General, Inc.*, 589 U.S. 288, 318 (2017) (Sotomayor, J., dissenting)). They also cite *Guedes v. BATFE*, 920 F.3d 1, 15–16 (D.C. Cir. 2019), but that passage concerns mootness, not when the "FVRA default 'kicks in,'" DE121 at 16–17. Meanwhile, *English v. Trump*, 279 F. Supp. 307 (D.D.C. 2018), DE121 at 16, addresses whether another statute's succession provision displaces the FVRA (and holds that it does not). And the phrase "'operates without presidential action'" (DE121 at 16) appears nowhere in *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016). As for *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), DE121 at 16, that case is distinguishable because the agency there created an *illusory* "principal deputy" position after the PAS vacancy arose that would disappear once the Senate confirmed the President's nominee for that PAS office. *Id.* at 10–11; *see id.* at 26 ("The office of Principal Deputy Director was created after the vacancy in the office of the Director arose; that office was nominally designated as the office of the 'first assistant' to the Director after the vacancy arose; and it will cease to exist as the office of the 'first assistant' as soon as the PAS vacancy is filled."). Here, in contrast, the FAUSA will continue to be the first assistant to the U.S. Attorney, and Ms. Habba could continue serving as such, even if the Senate confirms someone else as U.S. Attorney.

But even were this Court to adopt the Girauds' atextual reading of § 3345(a)(1), that would not disqualify Ms. Habba. The Attorney General's designation of Ms. Habba as First Assistant became effective immediately "upon" Ms. Habba's resignation as interim U.S. Attorney. DE108–7 (Exhibit G); *see also* DE127-1 (Mulchay Declaration), ¶ 9. And Ms. Habba's resignation did not become effective until 5:00 p.m. on July 24, 2025. DE108-4 (Exhibit D). Thus, she was the First Assistant the moment the vacancy arose, which happened before the District Court could exercise its authority under § 546(d) to appoint someone else on July 26,

2025, "120 days" after Ms. Habba's appointment as interim U.S. Attorney "expire[d]." 28 U.S.C. § 546(c)–(d).

### C.    Ms. Habba's withdrawn nomination does not preclude her from serving as Acting U.S. Attorney.

Although the Girauds invoke Section 3345(b)(1)'s bar on acting service by nominees, *e.g.*, DE121 at 17–19, it does not apply here. That provision precludes an otherwise-qualified individual from serving as an acting officer if (A) she did not serve as the first assistant for at least 90 days within the year preceding the vacancy, and (B) "the President submits" her "nomination … to the Senate for appointment to such office." 5 U.S.C. § 3345(b)(1)(A)–(B). Subsection (b)(1) prevents the President from circumventing the Senate's advice-and-consent function by installing a nominee for an office on an acting basis before the Senate can act on the nomination. *See SW General, Inc.*, 580 U.S. at 295–96 (tracing provision's history).

As the Supreme Court explained, "if a first assistant is serving as an acting officer under [subsection (a)(1)], he must cease that service if the President nominates him to fill the vacant PAS office." *Id.* at 301; *see Kitsap Tenant Support Servs.*, 816 F.3d at 558 (making the same point). Subsection (b)(1) therefore presupposes a current nomination to an office that is pending before the Senate. It does not bar someone from serving as an acting officer if that nomination is no longer pending.[2]

---

[2] Take, for example, Ann Carlson. Early in the Biden Administration, she became Chief Counsel to the National Highway Traffic Safety Administration (NHTSA). In September 2022, President Biden designated her as NHTSA Acting Administrator. He rescinded that designation effective March 25, 2023, because he nominated her to be NHTSA Administrator. In May 2023, President Biden withdrew her nomination, and he later redesignated her Acting Administrator. Ms. Carlson served in that capacity until December 2023. *See* PN464 - Nomination of Ann Elizabeth Carlson for Department of Transportation, 118th Congress (2023-2024), *available at* https://www.congress.gov/nomination/118th-congress/464 (noting the submission of Ms. Carlson's nomination for NHTSA Administrator on March 27, 2023, and its withdrawal on May 30, 2023); *see also* GAO, *Federal Vacancies for Prior Administration*, Joseph R. Biden, Jr., Administrative Vacancies, Biden_Vacancy.csv, row 238 (noting that the office of NHTSA Administrator became vacant on Sept. 11, 2022 and assigning it vacancy no. 21491), *available at* https://www.gao.gov/legal/federal-vacancies-reform-act/federal-vacancies-prior-administration; *id.*, Biden_Acting.csv, rows 254, 257 (noting, for vacancy no.

The Girauds' contrary arguments fail. DE121 at 17–19. Although the statute "contains no" express "safe harbor for later withdrawal" of a nomination, *id.* at 19, neither does the statute say that a person is forever barred from such service if the President ever submitted a nomination in the past, or continues to be barred once a nomination is withdrawn. The statute bars acting service when "the President *submits* a nomination of such person to the Senate for appointment to such office," 5 U.S.C. § 3345(b)(1)(B) (emphasis added). When a statutory provision is "expressed in the present tense," that requires consideration of the situation at the time of the regulated action, not before. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003); *Nichols v. United States*, 578 U.S. 104, 109–10 (2016) (same). The focus of the statute is therefore the state of affairs when Ms. Habba was appointed First Assistant, not when her nomination was pending in the past. At that later time, the President's "submission" was no longer pending. Indeed, the President submitted no nomination whatsoever since then. And the Girauds' proposed lifetime ban is not only atextually backward-looking, but also wholly disproportionate to the separation-of-powers problem that Congress sought to address in sub-section (b)(1): Congress's desire to prevent the nominee for a PAS position from assuming the duties of the office, in order to protect its ability to consider and act upon a pending nomination, is not implicated if no nomination is pending.

Accordingly, subsection (b)(1) has no bearing here. Ms. Habba was, at one point, the President's nominee to serve as U.S. Attorney for the District of New Jersey. The President withdrew that nomination, and the Senate never acted on it—all before Ms. Habba ever became the USAO-NJ's First Assistant. Ms. Habba is not now—and, throughout her service as First Assistant and Acting U.S. Attorney, never has been—the U.S. Attorney nominee.[3]

---

21491, Ms. Carlson's two periods of acting service between Sept. 11, 2022—Mar. 24, 2023, and July 3, 2023—Dec. 26, 2023, respectively).

[3] Although the Girauds question this timing, DE121 at 19, the Congressional Record confirms it. The Senate received the withdrawal July 24, 2025, *see* https://www.con-gress.gov/congressional-record/volume-171/issue-127/senate-section/article/S4756-4, and adjourned at 3:02 p.m. on that date. *See* https://www.congress.gov/congressional-rec-

### D.    The Attorney General's invocation of the FVRA here is not a "work-around" that nullifies § 546.

The FVRA provides the "exclusive means for temporarily authorizing an acting official" to serve in a position otherwise subject to the advice and consent of the Senate "unless" a "statutory provision expressly ... designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a). Here, § 546's plain text shows that it is not an alternative for authorizing temporary service as *acting* U.S. Attorney. It instead authorizes interim service *as the* U.S. Attorney. *See United States v. Gantt*, 194 F.3d 987, 999 n.5 (9th Cir. 1999), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) (en banc). The FVRA thus is the "exclusive" means for designating an acting U.S. Attorney. 5 U.S.C. § 3347(a); *see Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149–50 (2003). And the FVRA would remain an available alternative even if § 546 were treated as an acting-officer statute specific to U.S. Attorneys, DE108 at 8–9, 15–19—a point that the Girauds do not generally contest.

The Girauds fixate on a sequencing objection: that the Attorney General invoked the FVRA *only after* appointing Ms. Habba as an interim U.S. Attorney under § 546. DE121 at 19–20. But the order of operations is beside the point. Attorney General Garland, for example, allowed an Acting U.S. Attorney to begin serving in the District of New Jersey on January 9, 2025, by operation of the FVRA. That official then performed those duties for the first two months of this Administration. Had Attorney General Bondi never made an interim appointment at all, the District Court never would have had authority to appoint a successor interim U.S. Attorney under § 546(d) in the first place. That statute requires an interim "appointment" by the Attorney General to "expire[]" *before* "the district court ... may appoint a United

---

ord/volume-171/issue-127/senate-section/article/S4756-2. Accordingly, the Senate necessarily received the withdrawal prior to 3:02 p.m. on July 24, 2025, before Ms. Habba resigned as interim U.S. Attorney at 5 p.m. and was designated as the First Assistant instead. This Court may take judicial notice of these facts under Federal Rule of Evidence 201. *See, e.g.*, *Furando v. Ortiz*, No. 20-3739, 2020 WL 1922357, at *1 n.3 (D.N.J. Apr. 21, 2020) (citing *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 89 n.10 (3d Cir. 2016)).

States attorney to serve until the vacancy is filled." 5 U.S.C. § 546(d). Nothing in the FVRA or § 546 requires that the President and Attorney General apply either one or the other, but not both in succession, or that the same person they appoint under one cannot later be named under the other.

Recognizing that, OLC has long maintained that an interim "United States Attorney appointed by the Attorney General under section 546 may replace an acting United States Attorney irrespective of whether the acting United States Attorney has served for more than 120 days." *Temporary Filling of Vacancies in the Office of U.S. Attorney*, 27 Op. O.L.C. at 151. Neither the FVRA nor § 546 "by its terms excludes the use of the other, and the different type of official to be chosen—an acting United States Attorney in one case, a full-fledged United States Attorney in the other—weighs against inferring any such exclusion." *Id.* "Nor would anything in the statutes preclude the same person from acting as United States Attorney and then receiving an appointment under section 546." *Id.* The converse sequencing is equally appropriate here.

The Girauds insist that Congress "did not contemplate—and the statutes cannot be reasonably read to allow—a cumulative 330-day appointment period achieved by combining" the 120-day limit in § 546(c)(2) with the 210-day limit in the FVRA. DE121 at 23. But a lengthy period of acting service is not unusual—and, indeed, can happen for years, since the time an acting official may serve can be tolled once a first or second nomination for the position is pending. *See* 5 U.S.C. § 3346; Congressional Research Services, *The Vacancies Act: A Legal Overview*, at 13–15 (Jan. 27, 2025).[4] Nor do the Girauds dispute that an interim U.S.

---

[4] If the "vacancy" in question occurred solely when the PAS official vacated the post, DE121 16 n.3, then the real FVRA time limit would be 300 days from January 20, 2025, not 210, because this is a transition year, and that vacancy existed on President Trump's inauguration day. *See* 5 U.S.C. § 3349a. In addition, because Ms. Habba was nominated for the position, the FVRA clock would be tolled upon the submission of her nomination, and her nomination's withdrawal would start a new 210-day clock. *See* 5 U.S.C. § 3346(b)(1).

Attorney appointed under § 546(a) could have served for at least one full 120-day period following the nearly three months of acting service of the First Assistant that began on January 8, 2025. It is the Girauds' reading of the statute that would unnaturally truncate those time periods based on considerations nowhere to be found in the statutes themselves.

### E.  The Girauds' arguments about interim appointments as United States Attorney under § 546(a) are both irrelevant and wrong.

The Girauds attack the validity of Ms. Habba's appointment under § 546(a) and contest when it began and when it ended, all in order to contend that the District Court's authority to appoint an interim U.S. Attorney under § 546(d) was triggered. DE121 at 9–12. That argument is wrong on its own terms. But it is also beside the point. Even had the District Court validly appointed an interim U.S. Attorney under Section 546(d), the President removed that purported officeholder.

The Girauds falsely contend that the Attorney General removed the District Court's choice from her position as interim U.S. Attorney. DE121 at 2, 13, 15. But neither the Attorney General nor "DOJ" removed the former First Assistant from that position. Rather, the Attorney General removed the former First Assistant from her position *as FAUSA*, which the Attorney General had every right to do under 28 U.S.C. § 542(b) and 28 C.F.R. § 0.137(b). The First Assistant U.S. Attorney is, after all, an "assistant United States attorney" under § 542, and every "assistant United States attorney is subject to removal by the Attorney General," *id.* at § 542(b).

It was the President who removed the former FAUSA from her position as court-appointed interim U.S. Attorney, to confirm that appointment was ineffective. *See* DE127-2 (Gor Declaration). He had clear statutory authority to do so, because "[e]ach United States attorney is subject to removal by the President," 28 U.S.C. § 541(c), which unambiguously includes "a United States attorney" who is "appoint[ed]" by a district court, *id.* § 546(d). Moreover, he had clear constitutional authority to so, because Article II requires that the

President have at-will removal power over inferior officers wielding such significant prosecutorial and policymaking authority. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020) (explaining that, for inferior officers, the sole exception to at-will removal under Supreme Court precedent is for certain officers "with limited duties and no policymaking or administrative authority"). The Girauds seemingly agree. DE121 at 13 ("[O]nce Ms. Grace assumed the role of Acting U.S. Attorney by operation of the Standing Order, arguably only President Trump had the authority to remove her.").

So the Girauds' fixation on the status of Ms. Habba's interim appointment as U.S. Attorney is beside the point. Even were they correct—which, to be clear, they are not—that either Ms. Habba was not properly appointed as interim U.S. Attorney or that her appointment expired earlier than the Government maintains, that would at most mean that the individual whom the District Court appointed as interim U.S. Attorney served in that role for a brief period before the President removed her. Ms. Habba, therefore, as First Assistant, became the Acting U.S. Attorney under the FVRA, at the latest, when the President removed the court-appointed interim U.S. Attorney.

Aside from being irrelevant, the Girauds' arguments about Ms. Habba's § 546 appointment are wrong. They first contend that, even within an initial 120-day period, the Attorney General cannot switch who the interim appointee is, which would mean that Ms. Habba's appointment as interim U.S. Attorney was foreclosed by the prior interim appointment of John Giordano. DE121 at 9–10.[5] There is no textual basis for that limitation. The statute permits the Attorney General to make an appointment whenever "the office of United States attorney *is vacant*," 28 U.S.C. § 546(a) (emphasis added), which includes a vacancy because a prior interim appointee resigned. The statute imposes only one express limitation on the Attorney General's appointment power, which is that she may not select a person to whom "the

---

[5]  In fact, on January 27, 2025, then-Acting Attorney General McHenry purported to appoint a third person as interim U.S. Attorney, but that person declined the appointment a few days later. So that person never became interim U.S. Attorney.

Senate refused to give advice and consent" when nominated to that office by the President. *Id.* § 546(b). Indeed, § 546(c) says "*A* person" appointed under this section may serve (emphasis added), not "*The* person" appointed, and thus it expressly contemplates that there may be more than one such person, at the very least during the initial 120-day period. The Girauds' authorities (DE121 at 9–10) do not say otherwise: they focus on whether there is a single 120-day *period*, not how many people can serve *within* that period.

The Girauds next argue that, even if the Attorney General could appoint Ms. Habba after Mr. Giordano resigned, her appointment was capped at his maximum 120-day term, which would mean that it expired three weeks earlier than the Government maintains. DE121 at 10. Again, that position has no support in § 546's text. Section 546 does not say that a person may serve only until the expiration of 120 days after *the first* appointment by the Attorney General. Instead, once the Attorney General makes an interim appointment—first, second, or more—the "person appointed … may serve until the earlier of" the PAS appointment of a permanent U.S. Attorney or "the expiration of 120 days after appointment by the Attorney General under this section." *Id.* § 546(c). The provision thus links the 120-day expiration date to the date of *that* person's appointment.

Such an interpretation of the plain language accords with the ordinary usage of these terms. *See* 67 C.J.S. Officers § 144 (2024 Update) ("The term of office begins from the time, if any, fixed by law or, where no time is fixed, on the day of election or the date of appointment."); 67 C.J.S. Officers § 145 (2024 Update) ("An appointee's term of office 'expires' when the appointee has served to the legally specified termination date."). So Mr. Giordano's resignation did not shorten the time period for Ms. Habba's subsequent appointment. Likewise, although the District Court gains authority to make an interim appointment "[i]f an appointment expires under subsection (c)(2)," 28 U.S.C. § 546(d), Mr. Giordano and Ms. Habba each resigned *before* their appointments expired after 120 days, and thus the District Court's appointment authority was never triggered.

– 14 –

The Girauds finally argue that, at minimum, Ms. Habba's appointment expired on July 22, rather than July 25, given the President's "effective immediately" post. DE121 at 11–12. But as they themselves emphasize, DE121 at 7, § 546(a) vests the interim appointment power in the Attorney General, which she promptly exercised a few days later pursuant to the President's direction. DE108-1 (Exhibit A).

## II.    At minimum, Ms. Habba can lead the USAO-NJ as a Special Attorney and FAUSA pursuant to the Attorney General's express delegation of authority to her.

As explained in our prior briefs, even if Ms. Habba cannot serve as the Acting U.S. Attorney, she can continue to exercise prosecutorial and supervisory authority in the District of New Jersey pursuant to her position as Special Attorney and FAUSA along with the Attorney General's express delegation of authority to her in those capacities. *See* DE108 at 23–27; DE114 at 1–10. Despite the Girauds' repeated protests, DE121 at 2, 5, 8, 9, 14, 15, 18, 20, 24, that does not "circumvent" the constitutional and statutory limits on appointing inferior officers. Rather, it is a straightforward application of settled law.

First, the Attorney General unquestionably has authority—through multiple reinforcing statutes—to prosecute crimes and supervise litigation in the District of New Jersey. The Attorney General has that authority because she is the "head of the Department of Justice," 28 U.S.C. § 503, and possesses all the authority of the Department. Specifically, Congress vested the Attorney General with "[a]ll functions" of other officers, agencies, and employees of the Department of Justice, with narrow exceptions not relevant here. *Id.* § 509. This unqualified grant of authority necessarily includes the functions of the U.S. Attorneys under 28 U.S.C. § 547 to prosecute crimes in their districts.

In addition, Congress also directly vested the Attorney General with authority to conduct and supervise all litigation on behalf of the United States. Section 515 provides that the Attorney General may herself "conduct any kind of legal proceeding, civil or criminal ... which United States Attorneys are authorized by law to conduct," *id.* § 515(a), and § 518 provides that the Attorney General may "personally conduct and argue any case in a court of

– 15 –

the United States in which the United States is interested," *id.* § 518(b). Congress also expressly vested the Attorney General with the authority to "supervise all litigation to which the United States, an agency, or officer thereof is a party," and to "direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under [28 U.S.C. § 543] in the discharge of their respective duties." *Id.* § 519. *See also id.* § 516; *McGrain v. Daugherty*, 273 U.S. 135, 150 (1927).

Second, Congress gave the Attorney General authority to delegate these functions. Section 510 allows the Attorney General to delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510. Indeed, this Court and many others have recognized that the Attorney General has validly delegated prosecutorial authority to AUSAs. DE116 at 22–23. In addition, Congress also expressly authorized the Attorney General to "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought." *Id.* § 515(a); *see also id.* § 518(b) (the Attorney General "may direct … any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested").

Finally, Congress vested the Attorney General with authority to appoint various attorneys within the Department of Justice, including special attorneys and special assistants to the Attorney General, 28 U.S.C. § 515(a), assistant U.S. Attorneys, *id.* § 542, special attorneys to assist U.S. attorneys, *id.* § 543, and "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1); *see also id.* § 510 (authorizing the Attorney General to "make such provisions" as are "appropriate authorizing the performance" of DOJ functions by other persons); *United States v. Nixon*, 418 U.S. 683, 694–95 (1974).

This statutory framework authorizes the Attorney General, wholly apart from the presence of any U.S. Attorney, to exercise prosecutorial and supervisory authority in the District of New Jersey and to delegate those functions to others within the Department, including

– 16 –

attorneys "specially appointed" by the Attorney General. Here, the Attorney General appointed Ms. Habba as a "Special Attorney" and authorized her to "conduct in the District of New Jersey, any kind of legal proceedings, civil or criminal ... which U.S. Attorneys are authorized to conduct." DE108-5; *see* DE108-7. The Attorney General also delegated supervisory authority over the USAO-NJ to Ms. Habba by designating Ms. Habba as FAUSA, knowing that the office of U.S. Attorney was vacant and expressing her intent for Ms. Habba to serve as Acting U.S. Attorney. DE108-7 at 1; *see id.* at 2 (requesting appointment so that Ms. Habba "may lead the office"). Indeed, both the appointment documents and filings in this case leave no doubt that, even if Ms. Habba's service as Acting U.S. Attorney is somehow not authorized by the FVRA, the Attorney General wants Ms. Habba to supervise litigation in the USAO-NJ in her capacity as Special Attorney and First Assistant. Accordingly, the Attorney General has validly delegated to Ms. Habba the authority to conduct and supervise litigation in the District of New Jersey. There is thus no basis for enjoining Ms. Habba's participation—or the participation of anyone else in the USAO-NJ—in the Girauds' prosecution.

This Court expressed concerns that the Government's delegation argument would circumvent the statutory limitations on the office of U.S. Attorney, DE116 at 21, 25–26, and the Girauds make a similar argument, DE121 at 22–25. But there is a critical distinction between filling an office, serving as an acting official for that office, and merely performing the delegable functions associated with an office. That distinction is rooted in the FVRA, which addresses the circumstances in which an official may take on the title of "Acting officer." 5 U.S.C. § 3345 (title).

Being an "Acting officer" is not just a title. It means that the official in question may lawfully perform all functions associated with an office on par with an official who actually occupies the office, including any nondelegable functions of the office—that is to say, functions that are "required" by statute or regulation "to be performed by the applicable officer *(and only that officer)*." 5 U.S.C. § 3348(a)(2)(A)(ii), (B)(i)(II) (emphasis added). Section 546,

– 17 –

for its part, provides another means for officials to temporarily perform the nondelegable functions associated with the office of U.S. Attorney, and such attorneys—because they are actual (albeit interim) U.S. Attorneys and not just acting in that role—need to satisfy the statutory eligibility requirement associated with being a U.S. Attorney (28 U.S.C. § 545).

But neither the FVRA nor any other statute prohibits an official from being delegated functions that are *not* exclusive to the office of U.S. Attorney, like the authority to prosecute crimes—which is why the Girauds' challenge to whether Ms. Habba is the "Acting U.S. Attorney" or something else is beside the point. And when an official is merely performing functions of an office pursuant to a delegation, rather than occupying the office itself, that official is not subject to the statutory requirements for appointing and confirming a full-fledged U.S. Attorney.[6]

Rather than circumventing statutory requirements, delegation is another, distinct means of enabling someone other than a PAS officer to perform certain (but not necessarily all) functions of a PAS office. Numerous courts of appeals, OLC, and GAO have recognized that an officer who has been validly delegated the functions of a PAS office can continue to perform those functions even when the PAS office is vacant, and that this longstanding executive practice does not conflict with the FVRA's statutory mechanisms for acting service. The same reasoning demonstrates that the Attorney General's delegation of the authority to conduct and supervise litigation in the District of New Jersey does not conflict with the FVRA.

OLC has long endorsed that view. "Congress understood that there would be occasions … when there would, for a period, be no one qualified to serve in an acting capacity." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 72 (Mar. 22,

---

[6] The legislative history supports this plain-text reading. The Senate Committee on Governmental Affairs explained that the "[d]elegable functions of the [vacant] office could still be performed by other officers or employees," even when no acting official is serving under the FVRA. S. Rep. No. 105-250, at 18 (1998). This appears to have been a "compromise to address concerns that a broader definition could 'cause an unintended shutdown of the Federal agency within which the vacancy exists due to administrative paralysis.'" *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1337 (Fed. Cir. 2022) (quoting S. Rep. No. 105-250 at 30–31).

1999). To avoid the significant disruption of government operations that would result if none of the duties of a vacant office could be performed during a period when no "acting" official would be in place, Congress narrowly "delimited" the functions or duties that could be performed only by the acting officer or head of the Executive agency. *Id.* OLC observed that "[m]ost, and in many cases all, the responsibilities performed by a PAS officer will not be exclusive, and the Act permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency." *Id.* GAO also has long agreed that the nonexclusive duties of a vacant office can be performed by an official delegated those functions without violating the FVRA. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008), *available at* https://go.usa.gov/xtEQP.

Every court of appeals to consider the issue—including the Third Circuit—has agreed with this plain-text interpretation of the FVRA, and numerous courts have thus upheld the ability of government officials to perform lawfully delegated duties of a vacant PAS office. In *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1339 (Fed. Cir. 2022), the Federal Circuit held that the Commissioner for Patents' performance of a function of a vacant PAS office "did not violate the FVRA" because the relevant function was delegable and the FVRA "does not restrict who may perform the delegable functions and duties of an absent PAS officer." The court explained that the text of § 3348(a)(2) "is unambiguous: the FVRA applies only to functions and duties that a PAS officer alone is permitted by statute or regulation to perform. It does not apply to delegable functions and duties." *Id.* at 1336. In *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132, 134–35 (2d Cir. 2009), the Second Circuit held that it "did not violate the Vacancies Reform Act" for an officer in the Department of the Interior to perform a function of a PAS officer who had resigned because, in accordance with the agency's regulations, the Secretary of the Interior had delegated that authority to the officer.

In *Kajmowicz v. Whitaker*, 42 F.4th 138, 148–52 (3d Cir. 2022), the Third Circuit adopted the Federal Circuit's reasoning and upheld a rule issued by Acting Attorney General

Whitaker on that ground that, even if he was serving in violation of the FVRA, Attorney General Barr later ratified the rule and § 3348(d)(2) did not prohibit ratification because the relevant rulemaking authority was delegable. In *Gonzales & Gonzales Bonds*, 107 F.4th 1064, 1072–80 (9th Cir. 2024), the Ninth Circuit similarly upheld a rule issued by the Acting Secretary of the Department of Homeland Security on the ground that, even if he was serving in violation of the FVRA, Secretary Mayorkas later ratified the rule and § 3348(d)(2) did not prohibit ratification because the relevant rulemaking authority was delegable. These decisions confirm that the exercise of statutorily delegable duties is an independent mechanism by which an agency official can exercise the duties of a vacant PAS office.[7]

Accordingly, it is the routine practice in the Executive Branch, including in U.S. Attorneys' offices, that another official continues to carry on the delegable functions of a vacant PAS office pursuant to delegated authority if no acting official is available. *See, e.g.*, Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 633–35 (2020) (discussing history of delegations used as a substitute for an acting official). There have been multiple instances in which a FAUSA continues to lead a USAO pursuant to delegated authority when the office of U.S. Attorney is vacant and the time limit for acting service under the FVRA has expired.[8]

Other instances outside U.S. Attorney's office also abound. For example, Steven Bradbury led OLC from February 4, 2005 through the end of that Presidential administration without being confirmed to the position of Assistant Attorney General for OLC. During two

---

[7] *See also Stand Up for California! v. United States Dep't of the Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021) (recognizing that the "FVRA forecloses the delegation of exclusive duties and authorities to a successor official after expiration of the statutorily authorized 210-day period of acting-capacity service"), *affirming* 298 F. Supp. 3d 136, 150 (D.D.C. 2018) (holding that the exercise of delegable duties of PAS position by principal deputy after his acting service had expired did not violate the FVRA).

[8] For example, Elizabeth A. Strange led the USAO D. Ariz. as FAUSA from approximately Nov. 2017 until May 2019, *see, e.g.*, Brief of Appellee, 2018 WL 2418885; Michelle M. Baeppler led the USAO N.D. Ohio as FAUSA from approximately May 2022 until June 2023, *see, e.g.*, Brief of Plaintiff-Appellee, 2023 WL 2600208; and Robert J. Troester led the USAO W.D. Okla. as FAUSA from approximately August 2018 until June 2019, *see, e.g.*, Brief of Plaintiff-Appellee, 2018 WL 5309976.

portions of his tenure, the FVRA time limits precluded him from serving as the "Acting" official and he led OLC in his capacity as the Principal Deputy Assistant Attorney General. GAO explained that this was permissible under the FVRA because the functions of the vacant PAS office were delegable. *See* https://go.usa.gov/xtEQP. And, as we previously noted, Brian Boynton led the Civil Division of the Department of Justice throughout the entirety of the last Presidential administration without anyone ever being confirmed to the PAS office of Assistant Attorney General, including pursuant to delegated authority after the time for acting service under the FVRA had expired. *See* DE114 at 8–9. These are just two salient examples of a generally accepted practice.

The availability of delegation in no way evades the statutory requirements associated with occupying the office of U.S. Attorney (whether PAS or interim). Congress required that each U.S. Attorney "reside in the district for which he is appointed," except for narrow exceptions inapplicable here. *Id.* § 545(a). U.S. Attorneys must be appointed by the President, with the advice and consent of the Senate, *id.* § 541(a), and the appointment is for a "term of four years" plus continuing service until a successor is confirmed, *id.* § 541(b), unless they are appointed as interim U.S. Attorneys under § 546. But in exercising delegated authority to prosecute and supervise prosecution of crimes in the District of New Jersey in her capacity as Special Attorney and FAUSA, Ms. Habba would not be serving as U.S. Attorney or exercising any nondelegable duties that are exclusive to the office of U.S. Attorney, *see supra* at 15–17. Indeed, this Court recognized that AUSAs exercise prosecutorial authority that "fundamentally stems from the Attorney General," "pursuant to the Attorney General's delegation of authority." DE116 at 22–23. The authority to supervise AUSAs in a district also is not exclusive to the U.S. Attorney. Congress vested the Attorney General with that supervisory authority, 28 U.S.C. § 519, and the authority to delegate "any function of the Attorney General," *id.* § 510. Furthermore, § 515 is an express exception to the residency requirement (which Ms. Habba satisfies in any event) because it authorizes the Attorney General to "specifically direct[]" any "attorney specially appointed" by her to "conduct any kind of legal

proceeding … which U.S. Attorneys are authorized by law to conduct, *whether or not he is a resident of the district in which the proceeding is brought*." 28 U.S.C. § 515(a) (emphasis added).

That these distinct sources of authority exist for officials to perform these functions reflects that Congress provided multiple mechanisms for ensuring that government functions continue when a PAS office is vacant. As courts have recognized, if Congress does not like the balance that it has achieved, then Congress can amend the relevant statutes, but courts cannot. The Third Circuit has acknowledged that "most statutes that confer authority will permit subdelegation, which means that many statutory functions and duties will be ratifiable under the Vacancies Reform Act"; it also has emphasized that a "broad[er] reading of section 3348(d) would effectively cripple the operation of the federal government," and while Congress "can always recalibrate" the balance it struck, courts cannot "supplant Congress' judgment." *Kajmowicz*, 42 F.4th at 151 (cleaned up). *See also Gonzales & Gonzales Bonds*, 107 F.4th at 1080 ("even assuming various department heads can delegate virtually all of their functions or duties, this does not change Congress's authority under the current statutory scheme to alter the scope of those delegations, as it has done before," and "concerns of undesirable policy consequences" must be addressed to Congress) (cleaned up); *Arthrex*, 35 F.4th at 1337 ("Congress chose the limiting language of § 3348(a)(2) knowing full well that 'many [PAS officers] lack any meaningful statutory duties,'" but a court cannot "rewrite the statute nor supplant Congress' judgment." (quoting S. Rep. No. 105-250, at 18)).

That is not to say that an official delegated the functions of a U.S. Attorney is equivalent to an official actually serving as U.S. Attorney. When the President appoints someone as U.S. Attorney and that person is confirmed by the Senate, the person fully occupies the office of U.S. Attorney and unquestionably exercises all the authority Congress vested in that office. By contrast, an official delegated the functions of a U.S. Attorney may face litigation concerning the delegability of those functions, and some courts have rejected arguments that certain functions not at issue here were delegable. *See United States v. Weyrauch*, 544 F.3d 969, 974–75 (9th Cir. 2009) (per curiam) (certifications under 18 U.S.C. § 3731, ¶ 2); *cf. United States v.*

– 22 –

*Mangan*, 575 F.2d 32, 39 (2d Cir. 1978) (applications under 26 U.S.C. § 6103(i)(1)(B), the current version of which includes U.S. Attorneys). Moreover, the fact that an official has been through the crucible of Senate confirmation gives the official additional gravitas, which is a real, practical benefit to the President and the Department of Justice.

The Girauds' sole response to the foregoing analysis is that the Attorney General's delegation conflicts with the Supreme Court's decision in *SW General*. DE121 at 22–25. That is wrong. *SW General* involved a narrow FVRA statutory construction issue: whether the pro- hibition on certain nominees' serving as "acting officers" in § 3345(b)(1) "applies only to first assistants who have automatically assumed acting duties" under § 3345(a)(1), "or whether it also applies to PAS officers and senior employees serving as acting officers at the President's behest" under § 3345(a)(2)–(3). 580 U.S. at 293; *see also id.* at 305. The Supreme Court ex- pressly did not consider the FVRA's remedy provision, *id.* at 298, n.2, and the Court did not address—or have any occasion to address—the exercise of PAS functions pursuant to a dele- gation. Indeed, nearly all the court of appeals decisions recognizing that the FVRA does not prohibit the exercise or ratification of delegable PAS functions post-date the Supreme Court's decision in *SW General*. *See supra* at 19–20.

In sum, the statutes that Congress has enacted permit the Attorney General to do what she has done here: appoint Ms. Habba as Special Attorney, designate her as FAUSA, and delegate to her the authority to conduct and supervise litigation in the District of New Jersey. There is nothing exceptional about that. Accordingly, Ms. Habba can continue exercising those functions regardless of whether she is also properly serving as Acting U.S. Attorney.

## III.    The President's and Attorney General's actions here violate neither the Appoint- ments Clause nor the Due Process Clause.

There is no Appointments Clause problem here. U.S. Const. Art. II, § 2, cl. 2. That "clause divides all constitutional officers into two classes: 'inferior officers' and 'noninferior officers'" (called "'principal officers'"). *United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020). "Principal officers must be appointed by the President with the advice and consent of

– 23 –

the Senate." *Id.*; *see Edmond v. United States*, 520 U.S. 651, 660 (1997). "Inferior officers may be appointed in the same manner, but doing so is not constitutionally required." *Smith*, 962 F.3d at 763. "Instead, should it so choose, Congress may authorize the President alone [or the Head of a Department] to appoint inferior officers without the advice and consent of the Senate." *Id.*; *see* U.S. Const. Art. II, § 2, cl. 2.

Ms. Habba is at most an inferior officer for two reasons. First, U.S. Attorneys are inferior officers because their superior is the Attorney General, an agency head, not the President. *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 24–26 (1st Cir. 2000); *Gantt*, l94 F.3d at 999–1000. Interim U.S. Attorneys and Acting U.S. Attorneys fit that same description. *See, e.g.*, *Hilario*, 218 F.3d at 26. Second, an Acting U.S. Attorney "is 'only charged with the performance of the duty of the superior for a limited time and under special and temporary conditions,'" which makes Ms. Habba at most "an inferior officer under" binding Supreme Court precedent. *Smith*, 962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). And Ms. Habba is serving consistent with the Appointments Clause because she was appointed by the Attorney General, who heads the Department of Justice, pursuant to laws passed by Congress. The Girauds' only contrary argument derives entirely from their mistaken statutory arguments that Ms. Habba cannot serve as Acting U.S. Attorney under the FVRA and that § 515 does not authorize the delegation that Ms. Habba received here.

As for the Girauds' Due Process claim, DE121 at 20–22, it likewise derives entirely from their mistaken contentions that Ms. Habba can serve as neither Acting U.S. Attorney nor Special Attorney and FAUSA. As the Fourth Circuit put it in similar circumstances, "we are mystified as to exactly what the connection is between the appointment of which" the Girauds "complain[]" and their "right to a fair trial." *Smith*, 962 F.3d at 765. There is a Due Process right to an impartial judge, *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Tuney v. Ohio*, 273 U.S. 510 (1927), and a properly constituted jury or grand jury, *Peters v. Kiff*, 407 U.S. 493 (1972). But there is no Due Process right to choose one's prosecutor.

– 24 –

Contrary to the Girauds' contention, DE121 at 22, *Young v. United States ex rel Louis Vuitton et Fils S.A.*, 481 U.S. 787 (1987), did not ground its holding on the Due Process Clause. Rather, the Court there adopted a supervisory rule forbidding appointment of "counsel for an interested party" as prosecutors in a criminal contempt proceeding. *Id.* at 802. Ms. Habba has no conflict of interest in any event that would preclude her from continuing to supervise this case. Nor is there any government conduct in this case that denies "fundamental fairness" and is "shocking to the universal sense of justice." *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960) (cleaned up). So the Due Process Clause provides no support for recusing Ms. Habba and everyone she supervises because of her appointment.

## CONCLUSION

For all these reasons and those the Government advanced in its prior briefing, this Court should deny the pending motion and request that Chief Judge Chagares reassign this case back to Judge Kiel.

Respectfully submitted,

PAMELA J. BONDI
U.S. Attorney General

HENRY C. WHITAKER
Counselor to the Attorney General

ALINA HABBA
Acting U.S. Attorney
Special Attorney

ROBERT A. PARKER
KATHERINE TWOMEY ALLEN
Criminal Division

By:    Mark E. Coyne
       Assistant U.S. Attorney
       Chief, Appeals Division
       (973) 297-2002

Date: August 12, 2025

– 25 –

## CERTIFICATION OF SERVICE

I hereby certify that on August 12, 2025, I caused a copy of this response and its attachments to be served by the notice of electronic filing generated by this Court's electronic case filing system upon all counsel of record in this case.


Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division


Dated: August 12, 2025