UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JULIEN GIRAUD JR., and<br>JULIEN GIRAUD III,<br><br>      Defendants. | CASE NO. 24-CR-768 (ESK) |

---

**DEFENDANT JULIEN GIRAUD JR.'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT OR BAR THE ACTING UNITED STATES ATTORNEY FROM CONTINUING TO PROSECUTE THIS CASE**

---

Thomas S. Mirigliano, Esq.
**LAW OFFICE OF**
**THOMAS S. MIRIGLIANO, ESQ., P.C.**
40 Wall Street, 32nd Floor
New York, New York 10005
(718) 530-6548
TSM@MiriglianoLaw.com
*Attorneys for Defendant Julien Giraud Jr.*

**PRELIMINARY STATEMENT**

Defendant Julien Giraud Jr. ("Giraud Jr."), by and through his undersigned counsel, respectfully submits this supplemental brief pursuant to the Court's Order dated August 15, 2025 (Doc. 139). Giraud Jr. adopts and incorporates the arguments advanced in Mr. Pina's Supplemental Brief filed August 18, 2025 (*see United States v. Cesar Humberto Pina,* 2:25-cr-00436-MWB, ECF No. 65), and writes separately to highlight certain issues relevant to his arguments.

**LEGAL ARGUMENT**

**I.      SECTION 546(d) IS A JUDICIAL "HARD STOP"**

Congress deliberately created a sequence for filling U.S. Attorney vacancies. To read § 546(a) as authorizing successive, back-to-back interim appointments would nullify § 546(d). Courts must avoid interpretations that render statutory provisions superfluous, void, or insignificant. *RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Thus, the judicial appointment authority in § 546(d) must be given meaningful effect. *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1192 (D.N.M. 2008).

The legislative record confirms this construction. The House Judiciary Committee explained in 2007 that its amendments were enacted to restore the important role of the district courts in appointing interim United States Attorneys and to prevent indefinite control of these offices by the Executive. H.R. Rep. No. 110-58, at 6-7 (2007). DOJ's reading would reinstate the very indefinite control Congress sought to prevent.

**II.     FVRA CONTINUITY FORBIDS A POST-VACANCY FIRST ASSISTANT**

The FVRA provides that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity" when a vacancy arises. 5 U.S.C. § 3345(a)(1). The statute's continuity design presumes that the person already serving as First Assistant at the time of the vacancy steps in. *Gonzales & Gonzales Bonds & Ins. Agency, Inc.*

2

*v. United States Dept. of Homeland Sec.*, 107 F.4th 1064, 1068-69 (9th Cir. 2024). The requirement that the first assistant must have served in that position for at least 90 days during the 365-day period preceding the vacancy further underscores Congress's presumption that the first assistant will already be in place and familiar with the office's functions when the vacancy arises. *See* § 3345(b)(1).

The Supreme Court has stressed the FVRA's anti-circumvention purpose. *NLRB v. SW General, Inc.*, 580 U.S. 288, 292-94 (2017). Applying that principle, the district court in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 33–34 (D.D.C. 2020) invalidated a post-vacancy designation made solely to elevate a preferred candidate. Judge Moss explained that allowing agency-head vesting clauses to override FVRA safeguards would render the statute a nullity, since nearly every organic statute vests authority broadly in the agency head. *Id*. at 28-29.

The Government attempts to distinguish *Cuccinelli* by invoking *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021), (*see* Tr., at 106, 116, 130), and § 547's vesting of prosecutorial functions in the Attorney General. But *Arthrex* concerned constitutional supervision of inferior officers; it did not hold that vesting clauses override Congress's statutory limits. The FVRA's definition of "function or duty" turns on whether a responsibility was assigned by statute or regulation to the vacant office, not on whether the Attorney General could theoretically reassign it. 5 U.S.C. § 3348(a)(2).

Here, the Attorney General's designation of Ms. Habba as First Assistant after the vacancy had already occurred cannot satisfy § 3345(a)(1). Ms. Habba was never Senate-confirmed under § 541 and was not serving as First Assistant at the moment of vacancy. Her resignation from her interim appointment created no new FVRA vacancy. *See United States v. Eaton*, 169 U.S. 331, 343 (1898) (temporary acting service permitted only in genuine vacancies, not as a device for indefinite

tenure). Thus, even assuming § 547 permits delegation of certain prosecutorial responsibilities, the FVRA prohibits circumvention: functions assigned by statute to the U.S. Attorney "and only that officer" must be carried out either by a properly serving Acting United States Attorney under § 3345 or by the Attorney General directly—not by an unlawfully designated designee.

### III.   SECTION 3347(b) FORECLOSES DELEGATION END-RUNS

The Government's fallback reliance on 28 U.S.C. §§ 509, 510, and 543 fares no better. The FVRA explicitly states that its procedures are exclusive and that "any statutory provision providing general authority to the head of an Executive agency … to delegate duties" cannot substitute for FVRA compliance. 5 U.S.C. § 3347(b).

The Senate Report confirms Congress's purpose: DOJ's historic use of §§ 509 and 510 to perpetuate vacancies without Senate confirmation was precisely the practice the FVRA was meant to stop. S. Rep. No. 105-250, at 17 (1998). Courts have likewise rejected attempts to rely on delegation clauses to evade FVRA limits. *Cuccinelli*, 442 F. Supp. 3d at 16.

Section 543 is equally unavailing. It authorizes the Attorney General to appoint attorneys "to assist United States Attorneys when the public interest so requires." By its text and history (Act of Mar. 2, 1907, ch. 2564, 34 Stat. 1246; H.R. Rep. No. 59-2901 (1906)), § 543 contemplates supplemental manpower, not substitution of an entire U.S. Attorney's Office. Treating it otherwise would erase §§ 541 and 546.

### IV.   APPOINTMENTS CLAUSE CONSIDERATIONS

The Appointments Clause assigns Congress—not the Executive—the authority to decide how inferior officers are appointed. U.S. Const. art. II, § 2, cl. 2. *See Buckley v. Valeo*, 424 U.S. 1, 126 (1976); *Edmond v. United States*, 520 U.S. 651, 660 (1997). Congress exercised that

4

prerogative by enacting § 546: the Attorney General may make a short interim appointment, but thereafter the authority shifts to the courts until Senate confirmation.

Permitting the Executive to circumvent that framework through post-vacancy designations or general delegation statutes would consolidate appointment power in the Executive and nullify Congress's deliberate allocation. As the Supreme Court cautioned, the Appointments Clause is "among the significant structural safeguards of the constitutional scheme." *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991).

## V. REMEDY

When an officer serves in violation of the FVRA or the Appointments Clause, her actions are invalid. *SW General*, 580 U.S. at 295; *Ryder v. United States*, 515 U.S. 177, 182–83 (1995). The Court should therefore declare Ms. Habba's purported service as Acting United States Attorney unlawful.

## CONCLUSION

For the reasons set forth above, and those advanced in co-defendant Pina's Supplemental Brief, the Court should declare Ms. Habba's purported service unlawful and enjoin her from exercising any statutory authority reserved to a duly appointed United States Attorney in connection with the prosecution of Mr. Giraud.

Respectfully submitted,

**LAW OFFICE OF**
**THOMAS S. MIRIGLIANO, ESQ., P.C.**

Dated: New York, New York         By: _____
       August 18, 2025                  Thomas S. Mirigliano, Esq.

5