

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Rachelle M. Navarro*
*Assistant United States Attorney*

*970 Broad Street, 7ᵗʰ floor*
*Newark, New Jersey 07102*

*973-645-2700*

May 22, 2026

Honorable Edward S. Kiel
United States District Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101

> Re:    *United States v. Giraud Jr.*, 24-cr-768 (ESK)

Dear Judge Kiel:

Following the May 4, 2026 evidentiary hearing on Defendant's Motion to Suppress, the Government submits this brief in further support of its Opposition.[1]

The Court should deny Defendant's Motion to Suppress.  Detective James Heller's challenged statements are not knowingly or recklessly false statements.  Indeed, Detective Heller stated under oath *precisely what he reasonably believed to be true at the time.*  And even if this Court finds a knowing or reckless false statement, there are still sufficient facts giving rise to probable cause that the search warrant should stand.

## I.    <u>Detective Heller's Plain Words Cannot Be a False Statement.</u>

Defendant argued that Detective James Heller knowingly or recklessly made two false statements/omissions in his oral application to Judge Thomas Isenhour for

---

[1]    The Government also continues to rely on its prior briefing.  D.E. 82, 87.

a search warrant.   But he has failed to meet his burden to prove that these statements were false statements at all, or that they were knowingly or recklessly made.  *See United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (explaining that it is movant's burden to show "that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant").

### A.    Three Stops

The first challenged statement concerns the number of stops in Julien Giraud III's Uber trip.   The Government concedes that Detective Heller's statement regarding a roundtrip Uber ride was factually inaccurate.   As stipulated at the hearing between the parties, the Uber records show that the Uber stopped at another location after leaving the Elm Street residence but before continuing on to the Spring Street location.   Transcript of May 4, 2026 Evidentiary Hearing ("Tr.") at 206:3-22 (attached as Ex. A[2]); *see* D.E. 169.   But inaccuracy does not equate to a knowingly or recklessly false statement.   As evidenced by body camera footage, Detective Heller told Judge Isenhour what he reasonably believed to be true at the time.

The body camera footage showed that Detective Lysandra James (who primarily spoke to the Uber driver) told Detective Heller multiple times that the Uber driver had intended to make "three stops."   Tr. 74:9–75:10; 158:7-159:18; GXs. 1-5.   Detective Heller explained his understanding that the three "stops" were (1) the Elm Place residence, (2) the Spring Street location, and (3) back to the Elm Place

---

[2]    Exhibit A will be provided to the Court under separate cover.

residence. *See* Tr. 166:7-168:21. In Detective James's own words, the Uber trip was "There. Here. And back." Tr. 74:6-7. In other words, Detective Heller told Judge Isenhour precisely what Detective James told him, and what he reasonably believed to be true. No false statement can be found under such circumstances. *See United States v. Brown*, 631 F.3d 638, 648 (3d Cir. 2011) (recognizing that lack of an affirmative justification can lead a court to conclude an affiant acted with reckless disregard).

### B.   Brown Bag

Second, Defendant claims that Detective Heller knowingly or recklessly made a false statement when he told Judge Isenhour that the Uber Driver observed Giraud III exit the Elm Place residence with the brown bag. But Detective Heller cannot have made this "false statement" because Detective Heller never made this statement at all. As part of the oral application for a search warrant, the assistant prosecutor and Detective Heller had the following exchange:

| Assistant Prosecutor: | And did the Uber driver tell you where he first observed Mr. Giraud come out of? |
|---|---|
| Detective Heller: | He exited the – the residence at [] Elm Place in Irvington. |
| Assistant Prosecutor: | And when [Giraud III] exited the residence at [] Elm Place, did he have anything on him? |
| Detective Heller: | Yeah, he was carrying the same bag that we ended up apprehending him with. |

GX 7.

Contrary to Defendant's contentions, Detective Heller's response to the second question never mentioned the Uber driver at all. The question posed to Detective

Heller was simply whether Giraud III was carrying something with him.  Detective Heller responded in the affirmative that Giraud III had the bag with him when he left Elm Place.  This is what Detective Heller reasonably believed to be true based on his own training and experience, as well as the state of the investigation at that snapshot in time.  Specifically, when Detective Heller answered the assistant prosecutor's question regarding Giraud III's possession of the bag, Detective Heller understood the following facts to be true:

- Giraud III arrived at the Spring Street location in an Uber and not in his own vehicle;

- Giraud III had left the Elm Place residence and took an Uber trip straight to Spring Street; and

- When Giraud III arrived at Spring Street, he stepped out of the Uber carrying a brown bag.  Tr. 52:17-18; 55:8-13.

 Based on these facts, and his training and experience, Detective Heller reasonably concluded that there was probable cause to believe that Giraud III had left the Elm Place residence with the bag.  Tr. 55:21-24 ("Because if an individual came out of a residence and came to the next location or the next spot, he obviously exited the residence in possession of the narcotics and came to drop them off or deliver them or sell them.").  And this is not simply a post-hoc justification made up after the fact.  That Detective Heller developed this belief at the initial scene of the arrest *hours before* applying for the search warrant from Judge Isenhour is documented in the body camera footage when he expressly stated that belief.  GX 1; Tr. 58:23-59:2; 60:7-21.  As Detective Heller credibly explained at the hearing:

> In a case like this, where . . . utilizing a rideshare service we knew where the suspect had come from, we would always take these facts back to the Union County Prosecutor's Office and the on-call AP or the AP that we would be speaking to, and at least present the facts to them and let them make the determination whether this is an application they wish to move forward with.  [As to why this is an application that would be sought], [d]ue to the fact that Mr. Giraud left the residence at the time *in possession of narcotics* and came to sell narcotics to who he perceived to be a high school student.

Tr. 61:18-62:5 (emphasis added).

Therefore, when the assistant prosecutor asked "And when [Giraud III] exited the residence at [] Elm Place, did he have anything on him?", Detective Heller understood this question to mean, "Was [Giraud III] in possession of any narcotics [when he exited the Elm Place residence]?" Tr. 90:22-91:2.  Given Detective Heller's interpretation of this question, Detective Heller gave what he believed to be the truthful answer:  "Yeah.  He was carrying the same bag we ended up apprehending him with."[3]

Defendant attempts to convince this Court to find a false statement by asking the Court to read in words that Detective Heller simply did not say.  Specifically, Defendant wants this Court to rule that when Detective Heller stated, "Yeah, he was carrying the same bag that we ended up apprehending him with," what Detective Heller really meant was, "Yeah, [*the Uber driver said that*] he was carrying the same bag that we ended up apprehending him with."  But this Court should not read in

---

[3]    At the hearing, Detective Heller explained the intended meaning of his answer: "During the time of the application, our belief was that [Giraud III] left Elm Place and traveled right to Spring Street.  Thus, the belief is that he had—that he's carrying it on him, meaning he had the bag in his possession and that he exited the residence, got in the car and traveled directly to our location."  Tr. 91:13-18.

words to search warrant applications that were not said. *Indeed, this is precisely what the Third Circuit has directed courts not to do. United State v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (holding that, in assessing search warrant applications, "the [c]ourt confines itself to the facts that were before the magistrate judge, i.e., the affidavit, and does not consider information from other portions of the record" (internal quotation omitted)).

The Government does not contest that, with the benefit of 20/20 hindsight, perhaps Detective Heller's words were not as precise as they should have been. Nor does the Government contest that his words accidentally may have created the impression that the Uber driver saw Giraud III exiting the house with the bag. Indeed, the chances of such imprecision leading to misunderstandings is exactly the reason the majority of search warrant applications are submitted in writing and not orally. But the fact that Detective Heller may have been imprecise or even negligent is insufficient to find a knowingly or recklessly false statement. *See Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).

Additionally, the Government submits that the Court should consider the possibility of confusion created by the oral question-and-answer formatting of this application. In the context of overturning a perjury conviction, the Third Circuit has cautioned courts to consider the impact of imprecision in questioning when assessing the veracity of a defendant's answers. *See United States v. Serafina*, 167 F.3d 812, (3d Cir. 1999) (noting that courts should consider both the words of the answers and the context of the questions in overturning a perjury conviction for insufficient evidence). Indeed, if ambiguity in questioning would undermine a perjury conviction

where the standard is beyond a reasonable doubt, *see Bronston v. United States*, 409, 352, 362 (1973) ("Precise questioning is imperative as a predicate for the offense of perjury."); *United States v. Hird*, 913 F.3d 332 (3d. Cir. 2019), ambiguity in questioning used to procure a search warrant should also undermine a showing of a knowing or reckless false statement, where the burden of proof is preponderance of the evidence.

Additionally, the Third Circuit has instructed that "negligent police miscommunications in the course of acquiring a warrant do not provide a basis to rescind a warrant and render a search or arrest invalid." *United States v. Brown*, 631 F.3d 638, 650 (3d Cir. 2011) (internal quotation omitted). The Eleventh Circuit has similarly found that mistakes stemming from misunderstandings are, at worst, negligent and do not require suppression. *United States v. Brito-Arroyo*, No. 20-10974, 2021 WL 3661200, at *4 (11th Cir. Aug. 18, 2021) (finding that an affiant's "incorrect statements in the warrant application . . . were the result of a misunderstanding," that "any mistakes made in obtaining . . . the . . . warrant were, at most, only negligent," and that the "district court didn't err in applying the good faith exception").

Here, there is no knowingly or recklessly false statement. And in the absence of any such false statement, the search warrant stands under the good faith doctrine, *see United States v. Leon*, 468 U.S. 897 (1984), as explained in the Government's briefing at D.E. 82 at 25-27, incorporated herein.

## II.    The Search Warrant is Valid Nonetheless

Even if this Court finds that a knowingly or recklessly false statement was made with respect to the bag, this Court should still uphold the search warrant because probable cause exists even without the statement. *See United States v. Calisto*, 838 F.2d 711, 716 (3d Cir. 1988) (the next step is to ask whether "the warrant would have properly been issued if the omitted information had been supplied"). Even if that statement is excised, there is still sufficient probable cause to support the search warrant, as explained in the Government's briefing at D.E. 82 at 9-15, and 24, incorporated herein.

As explained in the Government's prior briefing, Judge Isenhour was presented with the following information as part of the search warrant explanation:

- Giraud III was a repeat drug offender;

- Giraud III had immediate and easy access to narcotics;

- the Elm Place residence was Giraud III's residence; and

- the Elm Place residence was likely where Giraud III kept his supply of narcotics.

These facts gave rise to the fair probability that the Elm Place residence was a stash house where evidence of the defendant's drug dealing would be found. *See United States v. Jones*, 994 F.2d 1051, 1055 (3d. Cir. 1993) ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases."); *United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000) ("In the case of drug dealers, a number of other courts

- 8 -

of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside.") (collecting cases).

As such, even assuming a knowing or reckless misrepresentation, probable cause existed that Giraud III's residence served, at least to some extent, as a stash house for a supply of narcotics and therefore there remains sufficient probable cause to support the search warrant. *See Yusuf*, 461 F.3d at 392 (finding that even if inaccuracies in an affidavit were recklessly made by the affiant, and those inaccuracies were excised from the search warrant affidavit, there would still be probable cause); *C.f. United States v. Burton*, 288 F.3d 91, 102-103 (3d Cir. 2002) (excising from a search warrant affidavit an allegation describing officers observing drug paraphernalia while conducting a protective sweep because officers did not have consent to conduct that protective sweep, but nevertheless finding that there would be probable cause to search even without that allegation).

<div style="margin-left: 40%;">

Respectfully submitted,

ROBERT FRAZER
United States Attorney

*Rachelle Navarro*

By: Rachelle M. Navarro
    Alison Thompson
    Assistant United States Attorneys

</div>

cc: Thomas Mirigliano, Esq., counsel for Julien Giraud, Jr.