## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. **JULIEN GIRAUD JR., and JULIEN GIRAUD III,** **Defendants.** | Case No. 24–cr–00768–ESK OPINION |

**KIEL, U.S.D.J.**

A judge found probable cause to issue a warrant to search defendant Julien Giraud Jr.'s (Giraud Jr.) home at 30 Elm Place in Irvington, New Jersey based on a detective's sworn oral testimony. That testimony included statements that the detective should have known were inaccurate and omitted critical information that the judge should have been provided. Because the detective's testimony was recklessly inaccurate and formed the basis of the judge's determination of probable cause, all evidence obtained from the search of the residence will be suppressed.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the morning of December 1, 2021, Detective James Heller of the Elizabeth Police Department (EPD) received a report that students from the local high school purchased marijuana by contacting a particular phone number. (ECF No. 170 (Hearing Tr.) 23:11–19.) The information came to Det. Heller through a thirdhand report: a student allegedly told a parent that other students purchased marijuana through the number; the parent told another EPD detective; and that detective told Det. Heller. (*Id.* 25:2–16.) Det. Heller did not interview the parent or the student, did not know the

parent's name, and had no other indicia of reliability of the information. (*Id.* 121:3–122:10.)

That morning, Det. Heller and Detective Lysandra James sent a text to the phone number. (*Id.* 25:19–22.) Det. James arranged to buy marijuana and Xanax at the Dunkin' Donuts on Spring Street in Elizabeth. (*Id.* 24:2–25:1; 29:19–33:12; Gov't Ex. 11A (screenshot of text messages).) Before the controlled buy, law enforcement had connected the phone number and Julien Giraud III (Giraud III) to 30 Elm Place through a CLEAR database search, but had not conducted surveillance of 30 Elm Place and had no record of drug seizures, arrests, or complaints at the location. (ECF No. 80–3 (Search Warrant App.) at 5, 9; Hearing Tr. 127:1–3; 141:22–142:21.)

Giraud III arrived at the Dunkin' Donuts in an Uber at 2:10 p.m. (Hearing Tr. 43:21–44:4; 47:15–21.) Det. Heller saw him exit the car carrying a PacSun shopping bag, which was later found to contain marijuana and Xanax. (Hearing Tr. 44:14–20.) Det. James arrested Giraud III. (Hearing Tr. 44:21–45:6.) At 2:12 p.m., while Giraud III was handcuffed and before the officers had confirmed with the Uber driver where he picked up Giraud III, Det. Heller said to Giraud III that, "based on the fact that you got picked up at that location and brought here, I'm going to obtain a search warrant for your residence." (Gov't Ex. 1 (body-worn camera video) 14:12:19; Hearing Tr. 60:7–11.) At the *Franks* hearing, Det. Heller characterized that statement as a "Freudian slip" and acknowledged that, at that point, Det. James's interview of the Uber driver was still occurring behind him, and officers did not yet know where Giraud III had come from. (Hearing Tr. 180:11–181:7; 183:13–14.)

Det. James then interviewed the Uber driver in Spanish. (*Id.* 54:12–18; 55:8–19; 152:25–153:14.) Det. Heller does not speak Spanish, but the body-worn camera footage shows that he asked the driver in English, "Is this where you picked him up?" and "You picked him up there," to which the driver

2

responded affirmatively.   (Gov't Exs. 1, 5; Hearing Tr. 66:18–67:25; 152:18–153:6.)

Later that afternoon, Det. Heller and an assistant prosecutor applied for a search warrant for 30 Elm Place by telephone before Honorable Thomas K. Isenhour, J.S.C.   (Search Warrant App.)   Det. Heller told Judge Isenhour that the Uber driver said he picked up Giraud III at 30 Elm Place and that Giraud III had paid for "a round trip," which Det. Heller described as "from 30 Elm Place to Spring Street in Elizabeth back to 30 Elm Place."   (*Id.* p.7.)   The government concedes that this statement was inaccurate: Uber records confirm that Giraud III's trip included a stop between 30 Elm Place and the Dunkin' Donuts.   (Hearing Tr. 206:3–22; ECF No. 169.)

The assistant prosecutor and Det. Heller had the following exchange during the warrant application:

> Prosecutor: And did the Uber driver tell you where he first observed Mr. Giraud come out of?
>
> Det. Heller: He exited the-the residence at 30 Elm Place in Irvington.
>
> Prosecutor: And when he exited the residence at 30 Elm Place, did he have anything on him?
>
> Det. Heller: Yeah, he was carrying the same bag that we ended up apprehending him with.

(Search Warrant App. p.7.)   It is clear to me that Judge Isenhour understood this exchange as Det. Heller's sworn testimony that the Uber driver stated to the officers that he saw Giraud III coming out of 30 Elm Place carrying the PacSun bag.   Judge Isenhour relied on that understanding to find probable cause.   (*Id.* pp.10–11.)

But at the *Franks* hearing, Det. Heller conceded that no one saw Giraud III walk out of 30 Elm Place with the PacSun bag.   (Hearing Tr. 99:21–100:6; 168:22–169:6; 204:10–14.)   The certified transcript of the interview with the Uber driver recorded on a body-worn camera likewise does not reflect any such

statement. (*See* ECF No. 80–5 (Uber Driver Tr.).) Det. Heller's contemporaneous investigation report nevertheless states that the driver "explained that he picked up Giraud III at [30 Elm Place]" and that "the male had exited the residence with the brown bag." (Hearing Tr. 104:6–105:24.)

Judge Isenhour found probable cause "just-just barely" because the application was "about the thinnest application [he had] ever seen." (Search Warrant App. p.10.) In approving the warrant application, Judge Isenhour relied on Det. Heller's inaccurate statements that the Uber driver stated that there was a "round trip" and that he saw Giraud III come out of 30 Elm Place with the PacSun bag. (*Id.* pp.10–11.) Police executed the search warrant at 30 Elm Place where they found and seized narcotics, firearms, ammunition, currency, and other items that are the bases of the charges against Giraud Jr. and Giraud III.

Giraud Jr. moves to suppress all evidence seized from 30 Elm Place (Motion) (ECF No. 80 (Mot.).) Giraud Jr. filed a brief (ECF No. 80–1 (Def's Br.)) and declaration with exhibits (ECF Nos. 80–2, 80–3, 80–4, 80–5) in support of the Motion. The government filed a brief and exhibits in opposition (Opposition) (ECF Nos. 82 (Opp'n Br.), 82–1) to the Motion, to which Giraud Jr. filed a reply (Reply) (ECF No. 84 (Reply Br.)).[1]

On May 4, 2026, I held a *Franks* Hearing on the Motion at which Det. Heller testified. (ECF No. 168; *see also* Hearing Tr.) Following the *Franks* Hearing, the parties filed supplemental briefs. (ECF Nos. 176 (Gov't Supp. Br.), 177 (Def's Supp. Br.).)

---

[1] Defendant Giraud III moved to join in the Motion and the Reply. (*See* ECF Nos. 81, 85 (Joinder Motions).) After Giraud III entered a guilty plea (ECF Nos. 165, 166), I denied the Joinder Motions as moot. (ECF No. 167.)

## II.    LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures.    U.S. Const. amend. IV.    And when it comes to protecting an individual's privacy, "the home is first among equals" and receives the utmost constitutional protection.    *Florida v. Jardines*, 569 U.S. 1, 6 (2013); *see Silverman v. United States*, 365 U.S. 505, 511 (1961) (recognizing that at the Fourth Amendment's "very core stands the right of a [person] to retreat into [their] own home and there be free from unreasonable governmental intrusion").    "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."    *Payton v. New York*, 445 U.S. 573, 586 (1980).    Warrants shall not be issued "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."    U.S. Const. amend IV.

In *Illinois v. Gates*, the United States Supreme Court "reaffirm[ed] the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations."    462 U.S. 213, 238 (1983).    "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them], …, there is a fair probability that contraband or evidence of a crime will be found in a particular place."    *Id.*    When confronted with a challenge to a probable cause determination, reviewing courts must ensure that the magistrate had a "substantial basis for … conclud[ing]" that a search would uncover evidence of wrongdoing.    *Id.* at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).    In that review, courts are confined to the facts that were before the magistrate and do not consider other parts of the record.    *United States v. Miknevich*, 638 F.3d 178, 181–82 (3d Cir. 2011); *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).    Although reviewing courts afford a

5

magistrate's determination "great deference," they should not "simply rubber stamp [their] conclusion."    *Miknevich*, 638 F.3d at 182 (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983), *cert denied sub nom.*, *Sanchez v. United States*, 466 U.S. 904 (1984)).

"As a general rule, the burden of proof is on the defendant who seeks to suppress evidence.    However, once the defendant has established a basis for [their] motion … the burden shifts to the government to show that the search or seizure was reasonable."    *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (internal citations omitted).

There are four scenarios in which an officer's reliance on a warrant is not objectively reasonable.    *United States v. Williams*, 3 F.3d 69, 71 n.2 (3d Cir. 1993).    One arises where "the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit."    *United States v. Am. Invs. of Pittsburgh, Inc.*, 879 F.2d 1087, 1106 (3d Cir. 1989) (citing *Franks*, 438 U.S. at 154).

A motion to suppress will be granted if the defendant establishes by a preponderance of the evidence that "the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of probable cause." *United States v. Aviles*, 938 F.3d 503, 508 (3d Cir. 2019) (citing *Franks*, 438 U.S. at 156).    A statement is made in reckless disregard for the truth when:

> (1) … an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) … when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).    If the reviewing court finds intentional or reckless statements or omissions, it "must reconstruct an affidavit that includes any such omissions and strikes any such false statements[, and] … must assess the materiality of the omitted information to

6

the probable cause determination by examining the reconstructed affidavit." *United States v. Alford*, 764 F. Supp. 3d 191, 240 (M.D. Pa. 2025).

### III.  DISCUSSION

#### A.       Uber Trip Statement

Giraud Jr. argues that the search warrant "lacks probable cause because it relies on vague, unsupported, and unverified statements attributed to a purported citizen informant and fails to establish the necessary factual nexus between 30 Elm Place and any criminal activity."  (Def's Br. p.12.)  More specifically, Giraud Jr. argues that Det. Heller "falsely represented to Judge Isenhour" that Giraud III's Uber trip was a direct round trip from 30 Elm Place, to Dunkin' Donuts, and back to 30 Elm Place   (*Id.* p.17.)

The government responds that Det. Heller reasonably understood that Giraud III's Uber ride consisted of "three stops": 30 Elm Place, the Dunkin' Donuts, and back to 30 Elm Place.  (Opp'n Br. p.24.)  And Det. Heller "told Judge Isenhour exactly what Det. James told him, and what he reasonably believed to be true."   (*Id.* p.25.)

Regarding the Uber Trip, Det. Heller told Judge Isenhour that, in speaking to the Uber driver:

> We explained, we asked him where he came from.   *He explained that he picked up his fa[re] at 30 Elm Place in Irvington and the party [Giraud III] had paid for through the application a round trip.*   So from 30 Elm [P]lace to Spring Street in Elizabeth back to 30 Elm Place.

(Search Warrant App. p.7. (emphasis added).)   In other words, Det. Heller testified to Judge Isenhour that the Uber driver told him and Det. James that Giraud III paid for a "round trip."   But the Uber driver never said this.  (*See generally* Uber Driver Tr.)   Rather, when asked by Det. James: "Where did you pick [Giraud III] up from," the Uber driver responded: "You can see the address … whe- where I was going to drop him off now is where I picked him up.

7

*Because he had three stops.*"   (*Id.* p.6 (emphasis added).)   Det. Heller did not tell Judge Isenhour that the Uber driver said there were to be "three stops."

Because Heller's recounting of the Uber driver's statement includes an assertion that Giraud III was only traveling "round trip" in the Uber and an omission of the Uber driver's statement that Giraud III "had three stops," I analyze them in turn.

As discussed above, an assertion is made with reckless disregard for the truth "when an officer has obvious reasons to doubt the truth of what he or she is asserting."   *Wilson*, 212 F.3d at 783.   Here, I find that Det. Heller had obvious reasons to doubt the truth of his statement to Judge Isenhour that Giraud III came straight from 30 Elm Place to the Dunkin' Donuts.   First, there is no evidence that the Uber driver told the police that the fare was for a "round trip," only.   Second, Det. Heller was told by Det. James that Giraud III "had three stops, there, here, and back."   (Hearing Tr. 74:5–9.)   Det. Heller testified that he understood "three stops, there, here and back" to mean that Giraud III had paid for a round trip.   (*Id.* 74:12–75:4.)   But even assuming that is a reasonable interpretation of "three stops," it is just as reasonable (if not more reasonable)[2] to interpret that statement to mean there was an intermediate stop between 31 Elm Place and the Dunkin' Donuts.   Yet Det. Heller did not follow up with Det. James or the Uber driver when he heard that Giraud III paid for three stops.   (*Id.* 164:19–24.)   He did not ask to look at the Uber driver's phone to see the route of the trip, even though he agreed that "information as to what was on that [phone] screen would have been imparted to Det[.] James," who later told Det. Heller that Giraud III "had three stops."

---

[2] Indeed, the more reasonable understanding of "three stops" is that there was an intermediate stop between 30 Elm Place and the Dunkin' Donuts, followed by a stop at the Dunkin' Donuts, and then back to 30 Elm Place.   "Stop" would be an unusual term to describe the pickup at 30 Elm Place.

(*Id.* 157:13–15; 158:13–18.)    I find that because there was—at the very least—an equally plausible interpretation of "three stops," Det. Heller failed to ask the obvious follow up question, and because neither the Uber driver nor Det. James said it was a "round trip," that Det. Heller "ha[d] obvious reasons to doubt the truth of what he … [was] asserting."    *Wilson*, 212 F.3d at 783.

Compounding to the reckless of his statement to Judge Isenhour is Det. Heller's failure to tell Judge Isenhour about the Uber driver's "three stops" statement.    "[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know."    *Id.*    A reasonable person would know that Judge Isenhour would want to know that the Uber driver told the police that Giraud III had paid for "three stops."    Judge Isenhour explicitly relied on Det. Heller's inaccurate statement of a "round trip" in finding probable cause.    (*See* Search Warrant App. p.11 ("I do find that there's probable cause for the other-other items previously specified. I make that determination based upon the observation of the Uber driver and the rest of the statement of the Uber driver that he picked him up at [30 Elm Place], [and] was taking him back to the location.").)

Accordingly, I find that Det. Heller recklessly misrepresented the facts both by testifying to Judge Isenhour that Giraud III's Uber ride was to be a "round trip" and by omitting the driver's actual statement that Giraud III paid for "three stops."[3]

### B.    PacSun Bag Statement

Giraud Jr. further argues that Det. Heller "falsely testified under oath that the Uber driver saw Giraud III exiting 30 Elm Place carrying the same

---

[3] Because I find Det. Heller's statement reckless, I do not analyze whether it was intentional or deliberate.

PacSun bag later seized during his arrest." (Def's Br. p. 18.) The government responds that Det. Heller's statement was not meant to imply that the Uber driver saw Giraud III carrying the PacSun bag out of 30 Elm Place, but rather that Det. Heller reasonably believed from his training and experience that Giraud III had the bag with him when he left 30 Elm Place. (Gov't Supp. Br. p. 4; *see also* Hearing Tr. 91:9–23 (Det. Heller stating he did not "intend[] to create an impression that the Uber driver had said that Giraud III was carrying the same bag").)

Det. Heller testified at the *Franks* Hearing that his statement about the PacSun bag to Judge Isenhour created a "misunderstanding." (Hearing Tr. 100:16–119.) Det. Heller also wrote a report that includes this same misunderstanding. (Hearing Tr. 110:16–111:19.) In reality, as Det. Heller testified, "[n]o one saw Giraud III walking out of 30 Elm Place on December 1, 2021 holding a bag." (*Id.* 169:2–3; *see also* Gov't Ex. 9 (Report of Investigation) (interview report concluding that the Uber driver did not remember if the rider exited the pickup location with the bag but remembers him carrying it as the rider reentered his car at the intermediate stop).)

I find that Heller recklessly provided false information to Judge Isenhour about the PacSun bag. *See Wilson*, 212 F.3d at 788 (finding that not telling the judge that an eyewitness could not identify the accused was reckless). The indisputable implication of Det. Heller's statement to Judge Isenhour, that "[y]eah he was carrying the same bag that we ended up apprehending him with," which immediately followed his statement that the Uber driver told him that Giraud III came out of 30 Elm Place, is that the Uber driver stated that he saw Giraud III coming out of 30 Elm Place with the PacSun bag. Fatal to the government's argument that Det. Heller's testimony before Judge Isenhour was made in good faith because it was based on his training and experience is that no testimony about his training and experience was elicited before Judge

Isenhour.    Rather, Judge Isenhour was indisputably lead to believe that the Uber driver told police that Giraud came out of 30 Elm Place with the PacSun bag.    Leaving that impression to linger with Judge Isenhour and not correcting the "misunderstanding" was a reckless disregard for the truth.

Det. Heller's statement to Giraud III, that "based on the fact that you got picked up at that location and brought here, I'm going to obtain a search warrant for your residence," is troubling.    He made this statement before receiving any information as to where Giraud was picked up by the Uber driver and whether the Uber came directly from Giraud III's residence to the Dunkin' Donuts.    After having reviewed the record and judged the credibility of Det. Heller's testimony at the *Franks* Hearing, I find that the statement was not a "Freudian slip."    Rather, at that moment, it expressed Det. Heller's already-formed intention to seek a search warrant of Giraud III's residence.    Such conduct evinces a reckless disregard—not mere carelessness—for obtaining the truth before concluding that Giraud III came directly from 30 Elm Place.    The reckless disregard for the truth and the rush to judgment spilled over into Det. Heller's testimony before Judge Isenhour.    Again, in accessing his credibility at the *Franks* Hearing along with the record evidence, I conclude that Det. Heller's desire to quickly obtain the search warrant tainted his duty to accurately relay the Uber driver's statement and recklessly created an obvious "misunderstanding" to Judge Isenhour that the Uber driver saw Giraud III come out of 30 Elm Place with the PacSun bag.

### C.    Corrected Affidavit

Having identified reckless misrepresentations in Det. Heller's testimony to Judge Isenhour, I reconstruct the testimony by including any omissions and striking any false statements and must determine whether the reconstructed testimony establishes probable cause.    *See Alford*, 764 F. Supp. 3d at 240.

11

For the following reasons, I find that the reconstructed testimony does not establish probable cause.

The following are the changes that would be made in a corrected affidavit.[4]

Prosecutor: Okay.   And did you happen to speak to the Uber driver?

Det. Heller: We, Detective James.   The Uber driver was more fluent in Spanish. Detective James and (INAUDIBLE) Detective Sharpman spoke to him.   He was obviously very concerned.   He was afraid he was in some type of trouble based on the police response.   We explained to him that, you know, he had nothing to do with this.   We explained, we asked him where he came from.   He explained that he picked up his fa[re] at 30 Elm Place in Irvington and the party [Giraud III] had paid for **THREE STOPS** ~~through the application a round trip.   So from 30 Elm [P]lace to Spring Street in Elizabeth back to 30 Elm Place.~~

Prosecutor: And did the Uber driver tell you where he first observed [Giraud III] come out of?

Det. Heller: He exited the-the residence at [] Elm Place in Irvington.

~~Prosecutor: And when [Giraud III] exited the residence at [] Elm Place, did he have anything on him?~~

~~Det. Heller: Yeah, he was carrying the same bag that we ended up apprehending him with.~~

(Corrected Search Warrant App. p. 7.)

Deleting the mention of the "round trip" and the Uber driver witnessing Giraud III with the PacSun bag at 30 Elm Place removes nearly all the facts Judge Isenhour relied on to find probable cause.   Judge Isenhour noted how the application was extremely "thin," but explicitly made his probable cause determination based on the observations and (admittedly false) statements attributable to the Uber driver.   (*See* Search Warrant App. p. 11.)   The deletion of the recklessly inaccurate statements removes any nexus between 31

---

[4] Insertions are denoted by **BOLD CAPITAL LETTERS**, and deletions are indicated by a ~~strikethrough~~.

Elm Place and drug activity such that there cannot be "a fair probability that contraband or evidence of a [drug] crime will be found in" 30 Elm Place. Consequently the warrant application was not supported by probable cause. *Gates*, 462 U.S. at 238.

The government argues that the evidence obtained from 30 Elm Place should not be suppressed because Det. Heller acted in good faith when applying for the search warrant. But as the parties agree, and as the Supreme Court has held, *see United States v. Leon*, 468 U.S. 897, 923 (1984), the good faith exception does not apply when the affiant acted deliberately or with reckless disregard for the truth. (*See* Opp'n Br. p.31; Reply Br. p.14; Gov't Supp. Br. p.7; Def's Supp. Br. p.14.) Because I have found that Det. Heller acted with reckless disregard for the truth and that the warrant application does not otherwise establish probable cause, suppression is appropriate.

## IV.  CONCLUSION

Giraud Jr.'s Motion (ECF No. 80) is **GRANTED**. All evidence obtained by the government from 30 Elm Place is hereby suppressed. An order accompanies this opinion.

　　　　　　　　　　　　　　　　　　　　 */s/ Edward S. Kiel*　　　　　
　　　　　　　　　　　　　　　　　　　　 **EDWARD S. KIEL**
　　　　　　　　　　　　　　　　　　　　 **UNITED STATES DISTRICT JUDGE**

Dated:  July 2, 2026

13